# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARTA MENESES SERNA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13-cv-03359 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| DENNIS SEARS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case concerns allegations that an officer exercised excessive force while carrying out the arrest of a suspected drunk driver. Plaintiff Marta Meneses Serna claims that, during the course of her arrest by Officer Dennis Sears, she sustained injuries resulting in a loss of consciousness and a loss of some of her teeth—all due to Officer Sears's exercise of excessive force. As a result, Serna has sued Officer Sears under 42 U.S.C. § 1983 for violations of her right to be free from the exercise of excessive force under the United States Constitution and under Illinois common law for battery. In addition, Serna has sued Police Chief Ronald Price and the Village of Bannockburn (the "Village") under § 1983 for the alleged constitutional violations arising from the Village's use-of-force policy and Chief Price's execution and implementation of said policy. Defendants have moved for summary judgment on all three claims. (Dkt. No. 98.) As explained below, Defendants' motion is granted in part and denied in part. Specifically, the Court grants Defendants summary judgment on the claim against Chief Price and the Village, but denies Defendants summary judgment on the claims against Officer Sears.

**BACKGROUND**

Unless otherwise indicated, the following facts are undisputed. On September 2, 2012, at approximately 12:33 a.m., Officer Sears observed Serna's car traveling below the speed limit and swerving. (Defs.' Stmt. of Material Facts ¶¶ 10, 11, Dkt. No. 98-4.) At the time, Serna's Illinois driver's license was suspended and she did not have a valid driver's license from any other state. (*Id.* ¶¶ 5, 6.) Despite this suspension, she was driving after consuming alcohol. (*Id.* ¶ 9.) Also in her car was her boyfriend Leonardo Alvarado. (*Id.* ¶ 15.)

Officer Sears signaled Serna to pull over and she complied. (*Id.* ¶¶ 14, 16.) Officer Sears asked Serna to produce proof of vehicle insurance and a driver's license. (*Id.*) Officer Sears could smell both vomit and alcohol coming from inside the vehicle. (*Id.* ¶ 17.) Officer Sears observed Serna's eyes to be droopy, watery, red, and glassy. (*Id.* ¶ 18.) Officer Sears asked Serna if there was any reason that she was travelling slowly and swerving; she said "no." (*Id.* ¶ 19.) Officer Sears asked Serna how much she had been drinking, and she stated that she did not know. (*Id.* ¶ 20.) Serna subsequently testified that she had consumed three and a half glasses of wine. (*Id.* ¶ 9.)

Serna produced an expired insurance card to Officer Sears. (*Id.* ¶ 21.) Serna also claims to have produced a Mexican driver's license to Officer Sears. (Pl.'s Stmt. of Add'l Facts ¶ 7, Dkt. No. 101.) Officer Sears requested that Serna exit her car. (Defs.' Stmt. of Material Facts ¶ 22, Dkt. No. 98-4.) Officer Sears observed Serna staring straight ahead and blinking for much longer than normal before she exited her car. (*Id.* ¶ 23.) Officer Sears claims that he believed Serna was falling asleep, but Serna denies that her behavior indicated this. (*Id.*; Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 23, Dkt. No. 100.) Officer Sears also claims then that as Serna exited the car she stumbled but caught her balance. (Defs.' Stmt. of Material Facts ¶ 24, Dkt. No.

98-4.) Again, Serna disagrees with Officer Sears's account and denies that she stumbled out of the car. (Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 24, Dkt. No. 100 (citing video evidence).) Officer Sears then instructed her to walk to the back of the car. (Defs.' Stmt. of Material Facts ¶ 25, Dkt. No. 98-4.) In so doing, Serna walked up to Officer Sears's partner, Officer John Kleffner, who was assisting Officer Sears, and got very close to him. (*Id.* ¶ 26.) Although Serna denies that it is true, Kleffner testified that he smelled a strong odor of alcohol on Serna's breath. (*Id.* ¶ 27.) Serna was wearing high-heeled shoes when she exited her vehicle. (*Id.* ¶ 28.)

Officer Sears then administered the horizontal-gaze-nystagmus test and the portable-breath test on Serna. (*Id.* ¶¶ 29, 34.) Both tests indicated that Serna had been consuming alcohol. (*Id.* ¶¶ 32, 37.) Because the results of this test indicated a blood-alcohol-content level above the legal limit for driving, Officer Sears determined that he had probable cause to arrest her. (*Id.* ¶ 37.) But Officer Sears claims that he did not inform Serna that she was under arrest while he was standing in front of her, as he was in a position in which she could charge at him. (*Id.* ¶ 39.) Officer Sears claims that he was also concerned that, while he had Serna behind her vehicle, no one was monitoring Alvarado; Officer Sears waited until after he was behind her to tell her that she was under arrest. (*Id.* ¶¶ 40, 38.) Serna disputes that Officer Sears was either concerned at the prospect of Serna charging at him or that Alvarado would be unmonitored. (Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶¶ 39, 40, Dkt. No. 100.)

Serna asked Officer Sears why she was being arrested and he responded "too many cervezas." (Defs.' Stmt. of Material Facts ¶ 41, Dkt. No. 98-4.) Officer Sears attempted to handcuff Serna, placing one handcuff on Serna's left wrist while attempting to handcuff the other hand. (*Id.* ¶¶ 42–43.) As Officer Sears was attempting to handcuff her, Serna turned her head and moved her right arm. (*Id.* ¶ 43.) Observing this, Officer Sears claims that he became concerned

3

that Serna would be able to use the open handcuff as a weapon and felt that he was losing his grip on Serna's right hand; again Serna denies that Officer Sears had any such concern and that any such a concern would have been reasonable under the circumstances. (*Id.* ¶¶ 44, 45; Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶¶ 44, 45, Dkt. No. 100.) Officer Sears then instructed Serna not to move; Kleffner testified that, at that time, he heard Serna reply "no." (Defs.' Stmt. of Material Facts ¶¶ 46, 47, Dkt. No. 98-4.) Serna states that she moved her head so that she could look at Officer Sears directly and determine why she was being arrested. (Pl.'s Stmt. of Add'l Facts ¶ 1, Dkt. No. 101.) At this time, Officer Sears claims he attempted to execute a leg sweep on Serna. (Defs.' Stmt. of Material Facts ¶ 48 Dkt. No. 98-4.) Serna denies that this was an attempted leg sweep, but rather that Officer Sears tripped her. (Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 48, Dkt. No. 100 (citing video evidence).) In either case, Serna fell forcefully onto the ground. (Defs.' Stmt. of Material Facts ¶ 51, Dkt. No. 98-4.) When Serna hit the ground, she landed on her left side and lost consciousness. (*Id.* ¶ 53.) Serna states that she also lost two or three teeth. (Pl.'s Stmt. of Add'l Facts ¶ 4, Dkt. No. 101.) Officer Sears called for an ambulance, which arrived and removed Serna from the scene. (Defs.' Stmt. of Material Facts ¶¶ 54, 56, Dkt. No. 98-4.)

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011). In assessing whether the movant is entitled to judgment as a matter of law, the Court must draw all reasonable inferences from the evidence presented in favor of the nonmoving party. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). "The initial burden is on the moving party . . . to demonstrate that there is no material question of fact

with respect to an essential element of the non-moving party's case." *Cody v. Harris*, 409 F.3d 853, 860 (7th Cir. 2005). "If the moving party meets this burden, the non-moving party must submit evidence that there is a genuine issue for trial." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

Defendants have moved for summary judgment on each of Serna's three claims: (1) the § 1983 claim against Officer Sears; (2) the § 1983 claim against Chief Price and the Village; and (3) the battery claim against Officer Sears. Specifically, Defendants argue that Serna's § 1983 claim against Officer Sears fails because he is entitled to qualified immunity and his exercise of force was reasonable under the circumstances; that Serna's § 1983 claim against Chief Price and the Village fails because Serna has not identified an express policy of the Village that caused a constitutional deprivation; and that Serna's battery claim against Officer Sears fails because he is immune for his conduct under the Illinois Tort Immunity Act, 745 ILCS 10/2-202.

## I. Section 1983 Claim Against Officer Sears

Defendants argue that Officer Sears is entitled to summary judgment on Serna's § 1983 claim for use of excessive force because Officer Sears has qualified immunity for his actions related to the arrest. Government officials enjoy qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *accord Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012).

5

The Court must grant summary judgment on qualified-immunity grounds unless the plaintiff has (1) adduced facts sufficient to make out that the officers' conduct constituted a constitutional violation, and (2) shown that the unconstitutionality of the officers' conduct was clearly established. *McNair v. Coffey*, 279 F.3d 463, 465 (7th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001)). The Supreme Court has permitted "[t]he judges of the district courts . . . to exercise their sound discretion in deciding which of the two [elements] of the qualified immunity analysis [to] addres[s] first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). But the Supreme Court also has "recognize[d] that it is often beneficial" to begin the analysis with the question of whether the "relevant facts . . . make out a constitutional violation at all." *Id.*

A. **"Constitutional Violation" Prong**

The Fourth Amendment to the United States Constitution prohibits an officer "from employing greater force than [is] reasonably necessary to make [an] arrest," even when he "has probable cause to arrest . . . ." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 724 (7th Cir. 2013) (internal quotation marks omitted). When officers "have, by means of physical force[,] . . . restrained the liberty of a citizen," that restraint constitutes "[a] seizure triggering the Fourth Amendment's protections . . . ." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (internal quotation marks omitted). If the parties dispute material facts, for example, about whether police "acted unreasonably because they responded overzealously and with too little concern for safety," summary judgment is inappropriate. *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003); *see also Cyrus v. Town of Mukwonago*, 624 F.3d 856, 892 (7th Cir. 2010) (discussing *Bell* and observing that "summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the use of force is often susceptible to different

interpretations").

Thus, the question before this Court is whether Officer Sears acted in accordance with "[t]he Fourth Amendment's reasonableness standard" in his exercise of force against Serna.[1] *Stainback v. Dixon*, 569 F.3d 767, 771–72 (7th Cir. 2009) (citing *Graham*, 490 U.S. at 388). "[T]he reasonableness of the officer's belief as to the appropriate level of force should be judged from" the perspective of an officer on the scene, because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary." *Saucier v. Katz*, 533 U.S. 194, 204–05 (2001) (internal citations omitted). Some important factors to consider in adjudging the reasonableness of an officer's exercise of force include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Officer Sears suspected Serna of committing a serious crime, but the nature of the crime did not by itself clearly make Officer Sears's exercise of force reasonable. Though Serna driving drunk posed a danger to the community, a reasonable jury might find that Officer Sears could have reasonably negated this potential danger by employing less forceful means. Serna might argue, for example, that Officer Sears could have denied her access to her car by standing next to the door to prevent her from driving away. Such an argument is not foreclosed by the evidence adduced thus far, and so it presents a genuine issue of material fact that persists.

---

[1] Defendants also contend that Serna's injuries were not caused by Officer Sears's exercise of force but rather as a result of them simultaneously losing balance. To support this conclusion, Defendants claim that Serna was wearing heels and that she was inebriated. Serna disagrees and, citing her deposition testimony, contends that Officer Sears used a take-down maneuver. (Pl.'s Resp. at 2, Dkt. No. 99.) As this is a genuine factual dispute, the Court must deny summary judgment on the grounds that Sears did not exercise any force against Serna.

Defendants argue that Serna posed an immediate threat to her own safety and the safety of others because she might have run into the middle of traffic. But Serna sets forth facts from which she could plausibly dispute that the "immediate threat" she posed reasonably warranted Officer Sears's exercise of force. For example, she points out that she was wearing high-heeled shoes, which limited her ability to run quickly. (*See, e.g.*, Pl.'s Resp. at 3–4, Dkt. No. 99.) Moreover, Officers Sears and Kleffner were close by and Officer Sears was considerably bigger than her. (Pl.'s Stmt. of Add'l Facts ¶¶ 12, 13, Dkt. No. 101.) On this record, there is a genuine factual question regarding whether the force inherent in the maneuver Officer Sears used was proportionate to the risk that Serna would run away into the middle of traffic.

Finally, Defendants claim that Serna was resisting arrest by trying to pull away from Officer Sears when he had hold of her hand. Serna testified that she was not trying to pull away or walk away, but that she was merely turning to look at Officer Sears. (Pl.'s Stmt. of Add'l Facts ¶ 1, Dkt. No. 101.) Again, there is a factual dispute about whether Serna was resisting arrest—or taking any other action—for which Officer Sears's exercise of force would be an appropriate response. As a result of these genuine issues of material fact, it would be inappropriate to grant summary judgment in Defendants' favor on the question of the reasonableness of Officer Sears's exercise of force.

### B. "Clearly Established" Prong

Whether qualified immunity protects an individual official from personal liability "generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citations omitted). How this standard operates "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more

particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Id.* at 639–40 (internal citations omitted). Because the Court must draw all reasonable inferences from the evidence in Serna's favor, and because the Court has already determined above that there is a genuine issue of material fact about the nature of Officer Sears's exercise of force, Defendants must therefore show that Officer Sears's exercise of excessive force—as alleged by Serna—was not a clearly established constitutional violation. The Court determines that the Defendants have failed to carry this burden.

As alleged by Serna, Officer Sears tripped Serna causing her to fall down to the ground with such force that she lost consciousness and some of her teeth. She was not actively resisting—she was merely turning her head. Moreover, she could easily have been restrained with much less physical force, as there were two officers close by and Officer Sears was a great deal bigger than her. If the fact finder agrees with Serna's characterization of the events, this would be a clearly established violation of Serna's right to be free from the exercise of excessive force. *See, e.g.*, *Gregory v. Oliver*, 226 F. Supp. 2d 943, 950 (N.D. Ill. 2002).

Defendants argue that the unconstitutionality of Officer Sears's alleged leg sweep is not clearly established. They cite the Illinois Law Enforcement Training and Standards Board Use of Force Training ("ILETSB") for the proposition that a leg sweep may be used to confront active resisters. Therefore, Defendants argue, Officer Sears was entitled to use a leg sweep against Serna, as she was actively resisting. This argument fails. Even assuming that the leg sweep is an approved technique to handle active resisters and that Officer Sears in fact executed this leg

9

sweep, there is a genuine factual dispute as to whether Serna was an active resister on whom the leg sweep could reasonably have been used. The ILETSB does not resolve that factual dispute, and hence granting summary judgment in Defendants' favor on this issue is inappropriate.

## II. Section 1983 Claim Against Chief Price and the Village

Serna's § 1983 claim against Chief Price and the Village is brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To succeed on this claim, Serna must show one of the following: (1) an express written policy caused the constitutional deprivation at issue; (2) the constitutional injury resulted from a decision made by a municipal employee with final policymaking authority; or (3) the constitutional deprivation resulted from such a widespread practice of the municipality that it constitutes custom with the virtue of law. *Monell*, 436 U.S. at 690–91; *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The Court already held in its order denying Defendants' Motion to Dismiss that Serna could not proceed under the theory that Price "was responsible for the execution and implementation of the express written use of force policy of the Bannockburn Police Department, and had final decision-making authority regarding the execution and implementation of the policy." (*See generally* Mem. Op. & Order on Defs.' Mot. to Dismiss at 4–6, Dkt. No. 92 (quoting Compl. ¶ 41, Dkt. No. 54)). But the Court did allow Serna to proceed on her alternative theory, namely that the Village and its police department had an express written use of force policy authorizing the leg sweep that Officer Sears utilized. (*Id.* at 5–6.)

Now, Serna argues that Officer Sears's actions "clearly ***violate*** . . . the Bannockburn Police Department Use of Force Policy." (Pl.'s Resp. at 9, Dkt. No. 99 (emphasis added).) This concession that the Village police department's written policy prohibits the unconstitutional activity in which Serna alleges that Officer Sears engaged fatally undercuts Serna's *Monell*

10

claim. As there is no genuine dispute of material fact that the Village ***did not*** have an express policy authorizing Officer Sears's exercise of force, the Court grants Defendants' motion for summary judgment on this § 1983 claim asserted against Chief Price and the Village.

### III.     Illinois State Law Battery Claim

Defendants finally argue that the Court should grant summary judgment on Serna's battery claim against Officer Sears because the Illinois Tort Immunity Act immunizes Officer Sears from suit. Under that law, "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. Conduct is willful and wanton if it is "a course of action which . . . if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. "'[Willful and wanton conduct] is generally considered in that area of fault between ordinary negligence and actual malice. In view of the fact that it is a matter of degree, a hard and thin line definition should not be attempted.' Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Ziarko v. Soo Line R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994) (internal citations omitted) (alterations in the original). The Illinois Supreme Court has further observed that "[w]hether conduct is willful and wanton depends on the circumstances of each case" and that "the issue of willful and wanton conduct is usually a question of fact for the jury." *Harris v. Thompson*, 976 N.E.2d 999, 1011 (Ill. 2012).

For their argument here, Defendants primarily rehash their previous arguments that Serna's injuries were not caused by Officer Serna's exercise of force and that, even if he did exercise force, Officer Sears acted reasonably. As discussed, there are genuine issues of material

fact regarding these questions that preclude summary judgment. Moreover, this case involves a potentially fine distinction in determining whether Officer Sears's conduct was "willful and wanton," merely "negligent," or neither. As such, the Court follows the Illinois Supreme Court's teaching and finds that whether Officer Sears's conduct was willful and wanton—and thereby outside the scope of tort immunity—depends on factual determinations appropriately left to the fact finder.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 98) is granted in part and denied in part. The Court grants the motion with respect to Count III against Chief Price and the Village. The Court denies the motion with respect to Counts I and II against Officer Sears.

ENTERED:

Dated: March 31, 2017

_____
Andrea R. Wood
United States District Judge